UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )   No. 16-CR-154-DAD
                               )
vs.                            )   SENTENCING
                               )
JOHN BAKER ROSE,               )
                               )
          Defendant.           )
_____)

Fresno, California            Wednesday, October 10, 2018

REPORTER'S TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:      United States Attorney's Office
                        BY: **BRIAN ENOS**
                        2500 Tulare Street
                        Suite 4401
                        Fresno, California 93721


For the Defendant:      Federal Defender's Office
                        BY: **ERIC KERSTEN**
                        2300 Tulare Street
                        Suite 330
                        Fresno, California 93721

1   Wednesday, October 10, 2018                    Fresno, California

2   11:22 a.m.

3            THE CLERK:  Court calls item number eight.

4   1:16-CR-154.  United States versus John Baker Rose.

5   Sentencing.

6            MR. KERSTEN:  Good morning, Your Honor, Eric Kersten,

7   Federal Defenders, for Mr. Rose, who is present.

8            MR. ENOS:  Brian Enos, United States.

9            THE COURT:  All right.  And the matter is before the

10  Court for imposition of judgment and sentence.  The Court is

11  in receipt of the presentence investigation report filed

12  September 14th, 2018; as well as the government's sentencing

13  memorandum and formal response to the presentence

14  investigation report filed September 20th; as well as the

15  defendant's sentencing memorandum, statement and letters of

16  reference filed with the Court on October 4th.

17           Is there anything else I should have received in

18  connection with sentencing?

19           MR. ENOS:  Not that I'm aware of, Your Honor.

20           MR. KERSTEN:  No, Your Honor.

21           THE COURT:  All right.  You can be either place you

22  want to be.  If you want to come to the podium, feel free.

23           MR. KERSTEN:  I believe he'd prefer to stay here in

24  case he needs to sit during sentencing.

25           THE COURT:  All right.  And Mr. Kersten, have you had

1  the opportunity to review the presentence report and to review

2  it with Mr. Rose in detail?

3          MR. KERSTEN:  Yes, Your Honor.

4          THE COURT:  And Mr. Rose, have you had the

5  opportunity to review the presentence report in your case and

6  discuss it with your attorney in detail?

7          THE DEFENDANT:  Yes, I have, Your Honor.

8          THE COURT:  And is there any legal cause why

9  imposition of judgment and sentence should not now be

10 pronounced?

11         MR. KERSTEN:  No.

12         MR. ENOS:  No, Your Honor.

13         THE COURT:  I note that there were no formal

14 objections to the presentence report.  There being no

15 objections to the findings of that report, the Court adopts

16 those findings, determines them to be true and correct.

17         I therefore find that the applicable offense level

18 here is 29.  That the defendant's criminal history places him

19 in category Roman numeral I.  And that in light of the charge,

20 which carries a mandatory minimum sentence of ten years, that

21 the guideline range becomes 120 months.  I note that the

22 probation office has recommended a 120 month sentence along

23 with 120 months term of supervised release.  No fine.  Both

24 the 1,000 -- or 100 and $5,000 penalty assessments, as well as

25 a restitution order.

1    In determining the appropriate sentence to be

2  imposed, the sentencing guidelines are only the beginning

3  point in the sentencing process.  The Court is ultimately to

4  impose a sentence that is reasonable as described by the

5  Supreme Court in decisions in *Booker* and *Fanfan*.  Therefore,

6  in addition to the sentencing guidelines, the Court is to give

7  due weight to the statutory factors set forth at 18 USC

8  Section 3553(a).  And I will do so in this case.

9    I may be wrong, but it appears to me that the two

10  issues that are primarily to be resolved are the $5,000

11  penalty assessment, which I have done a little bit of research

12  on.

13    And then the issue of restitution, that I'm still a

14  bit unclear on.  I know what the restitution submission has

15  been.  I don't think that the basis for that restitution

16  request, while it's understandable and it makes sense, is not

17  supported by the law.  That that is not a basis for

18  restitution award under the federal statutes that govern here.

19  But as to what would be an appropriate restitution amount and

20  how I determine that, that's not entirely clear to me.  So

21  we'll get to those.  Those are what I think are the two main

22  issues.

23    Mr. Kersten, is there anything that you wish to say

24  on behalf of Mr. Rose before sentence is pronounced?

25    MR. KERSTEN:  Well, Your Honor, in regards to the

1    legal issues of the $5,000 special assessment.

2          THE COURT:  I just -- I think my question more is for

3    the government on that one, just to let you know.

4          MR. KERSTEN:  Okay.

5          THE COURT:  Because I think -- although my research

6    indicates that the issue of the $5,000 penalty

7    assessment -- and there's debate in the courts, although it

8    seems to be fairly well recognized, from my point of view,

9    that ability to pay can be considered, but it must also

10   include whether there is reason to believe that in the future

11   the defendant may have the ability to pay.  And so it's really

12   a factual determination.

13         For instance, in a case *United States versus Kelley*,

14   the individual was -- which is found at 861 F 3d 790, it's an

15   Eighth Circuit decision from 2017.  I think the district court

16   looked at it and the Court of Appeals ultimately said, look,

17   if the defendant was college educated, otherwise employable in

18   the future, that there was no factual background that would

19   suggest that the defendant was going to be unable in the

20   future to pay a $5,000 penalty assessment, that it

21   could -- that the assessment could and perhaps even should

22   still be imposed.

23         My question really has to do with -- is directed more

24   towards the government, when we get there, when I get to the

25   government on this issue.  Because it would appear to me that

1    I should not impose the $5,000 penalty assessment in this case

2    as opposed to an amount in restitution because, as a 77

3    year-old, unless there's some asset out there I don't know

4    about or some ability that I don't know about, that it is

5    pretty improbable that, at the age of 86, 85 plus, that the

6    defendant would be employable.

7         And that, under those circumstances, there's a proper

8    basis to make the finding required that the defendant wouldn't

9    have the ability to pay the penalty assessment as opposed to

10   potentially a restitution order in an amount to be determined.

11   But I'll get to Mr. Enos on that one.

12        MR. ENOS:  Actually, Your Honor, the government

13   agrees.

14        THE COURT:  Okay.

15        MR. ENOS:  And so -- and actually was going to

16   bolster both the Court and probably the defense's arguments

17   with respect to this issue.  One, I believe the Court's

18   analysis is correct.  Two, this was a long process getting

19   this case resolved.  And when I first put the $100 in as a

20   special assessment, it was before our office started typically

21   adding the $5,000.  And government's word is good.  I know

22   there's that *Alcala-Sanchez* case, which I'm well aware of,

23   which essentially says from the Ninth Circuit to the

24   government, thou shalt specifically perform the terms of the

25   plea offer.  I see no reason to blow this plea up for this

1  issue.

2          THE COURT:  Okay.

3          MR. ENOS:  Third issue is if there is any money to be

4  imposed, the government would rather it be in the form of

5  restitution and go to the victim rather than as a special

6  assessment and disappear forever.

7          THE COURT:  Well, I think I concur in that assessment

8  as well.

9          So, Mr. Kersten, with that background, anything that

10 you wish to say with respect to imposition of judgment and

11 sentence?

12         MR. KERSTEN:  Yes.  Just very briefly.  I think

13 everyone is in agreement, as far as the government, the

14 defense and the probation office, regarding the term of

15 incarceration in this case.  And we're asking the Court to

16 impose the guideline term that the parties have agreed to,

17 which would be ten years imprisonment.

18         I believe this is really a sad case all around.  I

19 mean, Mr. Rose, he's ashamed of his actions.  He knows there's

20 no excuse for them.  He apologizes to the victim and her

21 family.  But I think that the letters that were submitted on

22 his behalf show that in other aspects of his life, he's led an

23 admirable life.  He's been devoted to community service.  He

24 was in the military.  He was honorably discharged.  He's been

25 generous to his friends.  He's helped them out financially

1    when he could.  He's done a lot of positive things.

2         And again, that doesn't in any way lessen what he did

3    here.  But I think that it's really, really -- it's one of

4    those things that makes you wonder when you look at it.  But I

5    think when we look at Mr. Rose here today, he's 77 years old.

6    He's been in custody for two years.  His -- both his parents

7    and all his siblings passed before reaching age 77.  He has

8    health problems consisting of high blood pressure, high

9    cholesterol, diabetes, he had a heart attack, triple bypass

10   surgery back in 2007.  He's not in the best of health.

11        I know that since he's been here in custody over the

12   course of this case, that he has -- he's lost about 60 pounds.

13   I know he looks much more elderly than he did when he first

14   came in.  His hope is to be able to last long enough to

15   survive the sentence and return to the public.  He wants to

16   engage in community service as best he can.  He wants to be

17   productive.  He wants to interact with folks.

18        And, you know, given his age, his good works in the

19   past, his lack of resources, I would just note that related to

20   the issue that the Court mentioned before, but he has no

21   assets, no income.  Probation calculates a net worth of

22   negative $35,000.  He's -- for that reason, he would ask the

23   Court to order only a 60 month term of supervised release

24   following his term of incarceration.

25        He's not optimistic that he'll last to -- I believe

1   if he got his maximum good time and his credit for time

2   served, he would be 83 or 84 years old when he gets released

3   on this.  So best case he's 83 years old when he gets out of

4   custody.  That would mean at a minimum he would be 88 years

5   old at the end of a 60-month term of supervised release.  And

6   so we would ask the Court to impose that term just to give him

7   something to look forward to.

8           But again, he apologizes to the victim and her

9   family.  But he would ask the Court to consider the other

10  positive aspects of his life when imposing sentence here

11  today.  We're requesting a 120 month term of incarceration

12  followed by a 60 month term of supervised release.

13          THE COURT:  And Mr. Enos, anything the government

14  wishes to add with respect to sentencing?

15          MR. ENOS:  Yes, Your Honor.  The government candidly

16  agrees with both probation and the defense with respect to the

17  ten year incarceration term.  I know that that ends up being

18  the de facto sentencing range.  If there was a mandatory

19  minimum, it would be somewhat less than that.  So that, the

20  parties agree, is appropriate.

21          With respect to the term of supervised release, ten

22  years is the standard term for collectors.  This is a

23  collector plus prime.  This is much, much worse conduct than

24  collecting images of children being sexually abused.  This is

25  someone who groomed someone online over the span of months,

1  flew out here not one time but twice to actually sexually

2  abuse someone who was particularly vulnerable.

3  So I think any judgment that contemplates the term of

4  supervised release in light of the relevant 3553(a) factors,

5  one of them is, you know, try to impose sentences of similarly

6  situated defendants in a similar manner, just for some

7  consistency.  If anything, would impose a longer term than the

8  ten year term of supervised release.

9  I'm personally happy to hear that defendant's sorry.

10  Candidly, in most sentences I'm at, defendant says he or she

11  is sorry.  But that's not enough here.  This is someone who, I

12  hope, has a good 75, 80 years of life left, who will always

13  have a scar.

14  So with that being said, the government would ask

15  that not a shorter term of supervised release than the

16  standard ten years, but actually a longer one be imposed in

17  light of the applicable 3553(a) factors.

18  With that, the government welcomes any questions.

19  THE COURT:  Restitution?

20  MR. ENOS:  Try as I might, the government is seeking

21  restitution.  The statutes candidly are flawed.  2259 says you

22  better apply restitution in a child pornography case.  This

23  case, the charge to which Mr. Rose pleaded guilty is in a

24  separate chapter all together and, unfortunately, is not privy

25  to 2259.

1    So what the government did was construct a two-part

2  argument for the purpose of trying to get to the point of

3  awarding some type of restitution to this victim, who just is

4  more deserving than the standard restitution victims, who

5  themselves are deserving and fully deserving.  So what the

6  government identified was a provision in Title 18 -- and it's

7  in our papers, so I'm not going to belabor it too much.

8    But it's Section 3663A(c)(1)(A)(i) that says

9  restitution's mandatory in violent -- with respect to violent

10  offenses.  The Ninth Circuit has not directly addressed

11  whether 2422(b) charges are violent offenses.  But they have

12  said a sister charge in the Mann Act, 2423(b) is a violent

13  offense; and the Tenth Circuit has said that such offenses are

14  violent offenses.  So what the government does is at least

15  provide a baseline macro statute from which the Court may

16  work.  The relevant conduct, which is not disputed by the way

17  in this case, does include receipt of sexually explicit

18  depictions of minors.  So it really does include a 2252(a)(2)

19  conduct.

20    With that being said, the government's argument is

21  that the just and proper thing to do is to consider both 3663A

22  as well as the relevant Ninth and Tenth Circuit jurisprudence,

23  which really seems to establish that, yeah, this charge to

24  which Mr. Rose pleaded guilty really was a violent offense.

25  The relevant conduct seems to loop in -- or at least the

1    government's argument is it loops in 2259, which says, by the

2    way, any harm proximately caused by the offense is awardable.

3        We don't have a lot of paperwork on this issue.  But

4    what we do have is a real victim who's seeking restitution.

5    And under no circumstances can I see her as being harmed

6    either less or equal to child pornography victims that were

7    not personally sexually abused by the relevant defendant.  So

8    with that being said, the government would request that

9    restitution be awarded in this case.  And that it's legally

10   justifiable.

11       With respect to the amount, the victim has asked for

12   500,000.  I'm not sure -- and I know that the victim has

13   relatives in the room.  I'm not sure how we can pencil that

14   amount based on what we've got.  But something, the government

15   would request, be awarded.

16       THE COURT:  Anything you want to say about that?

17       MR. KERSTEN:  Yeah.  Briefly, Your Honor.  I would

18   note that the government mentioned in its -- I didn't go into

19   it in detail in my sentencing memorandum, because I didn't

20   think it was necessary based on the -- the government's

21   recommendation and the presentence report.

22       But as I noticed in my informal objections,

23   the -- there was an initial statement by the victim and then

24   there was a later recorded statement.  And those statements

25   were inconsistent.  And it turns out that the victim had been

1  communicating with somebody else for about a year prior to

2  communicating with Mr. Rose.  She actually first spoke to Mr.

3  Rose or communicated with him -- not spoke, but communicated

4  online about two weeks prior to the time that he flew out

5  here.  So I know that that doesn't really mitigate what he

6  did, but it wasn't a situation where he was grooming her for a

7  long period of time.  He flew out here very shortly after he

8  communicated with her.

9        Also regarding the images, the only images the

10  government ever provided to us, despite numerous requests,

11  were there were eight images of the victim.  By my evaluation

12  of them, one would constitute sexually explicit conduct.  One

13  or two others possibly sexually explicit conduct.  But it's

14  arguable.

15        But on none of those images was the victim's face

16  visible.  There were other images of the victim where her face

17  was visible and based on the surrounding circumstances, it

18  seems that most likely that was the same person in the other

19  images whose face wasn't visible.  But I think it's important

20  to note that this isn't a situation where there's quantities

21  or any, for that matter, child pornography that's out there

22  floating around on the internet.  That's not what occurred

23  here.

24        THE COURT:  No, it's much more devastating than that

25  in my view.

1      MR. KERSTEN: Understood.  Yeah, it's -- what Mr. Rose

2 did was absolutely wrong.  And I certainly, certainly

3 understand that.  And I'm not trying to minimize that.  It's

4 just to respond --

5      THE COURT:  It's really just a question of what I'm

6 going -- how much I'm going to order.  It's probably

7 fruitless, given the defendant's age and lack of financial

8 wherewithal.  But if ever in a case I felt that the victim

9 deserved payment, this would be it.

10      MR. KERSTEN:  Understood, Your Honor.

11      THE COURT:  And so the question is --

12      MR. KERSTEN:  And I --

13      THE COURT:  -- what number should I set.  Because the

14 fact that it can't be determined with great certainty should

15 not prevent an order of restitution in a case like this.

16      MR. KERSTEN:  Well, as the probation office noted in

17 its report, I understand the Court's feelings and concern.

18 But I don't believe the loss of virginity that's claimed --

19      THE COURT:  No.

20      MR. KERSTEN:  -- is subject to restitution.  And we

21 would object to restitution on that ground.

22      THE COURT:  Well, I'm going to impose it.

23      MR. KERSTEN:  Understood.

24      THE COURT:  Mr. Rose, is there anything you wish to

25 say to me before I impose sentence in your case?

1        THE DEFENDANT:  Your Honor, I wish to apologize to

2    this Court, to the victim and to her family for pain that I

3    have caused.  I offer no excuse as I have none.  I deeply

4    regret my actions.  And I thank the Court for your time.

5        THE COURT:  Well, what you have done is despicable

6    and inexcusable.  Certainly you at some level appreciate that.

7        THE DEFENDANT:  I do, Your Honor.

8        THE COURT:  That doesn't mean that you never did

9    anything good in your life, you know.  I read the presentence

10   report.  Obviously you've made contributions to other folks.

11   But what you did here, just despicable.  And really, really

12   hurt somebody very vulnerable.

13       Pursuant to the Sentencing Reform Act of 1984, it is

14   the judgment of the Court that the defendant John Baker Rose

15   is hereby committed to the custody of the Bureau of Prisons to

16   be imprisoned for a term of 120 months.

17       The defendant shall pay a special assessment of $100.

18   The Court finds that following the decision in *United States*

19   *versus Kelley*, 861 F 3d 790, Eighth Circuit, 2017, I

20   specifically find that the defendant has no current ability to

21   pay the $5,000 restitution and has no likely -- no even

22   reasonable possibility of affording the payment of the $5,000

23   penalty assessment under the Justice for Victims of

24   Trafficking Act of 2015, 18 USC Section 3014.

25       And in addition, the government did not, as part of

the plea agreement, seek that penalty assessment. Which, as

the government has indicated, poses other issues with respect

to it fulfilling its obligation under the plea agreement.

And for all those reasons, the Court will not impose

the $5,000 penalty assessment under 18 USC Section 3014.

The Court also finds the defendant does not have the

ability to pay a fine, imposition of a fine is therefore

waived.

The Court notes that the victim in this case has

requested an award of $500,000 in restitution. That -- the

basis for that request is simply not capable of serving as the

basis for restitution order under the provisions of federal

law with respect to restitution, including those relied upon

by the government.

One of the problems here is that we have very

little -- we have very little evidence or indication about

what future treatment might -- might flow from all of this.

What that might cost. Whether there's any current costs

associated with it. The presentence report does talk about

costs that are -- that have already been incurred that were

to, at least some very real degree, directly attributable to

the offense conduct. The required movements and the like.

But it just seems to me that it's almost a certainty

that the victim in this case in the future will require some

sort of counseling down the road to continue to heal from

1   what's happened here.  I just can't imagine that I can't

2   approximate some restitution order from what's certain to be

3   needed in the future.

4          And for that reason, under the statute cited by the

5   government in its sentencing memorandum and a combination

6   thereof, I'm going to order the defendant to pay restitution

7   to the victim in the amount of $25,000.

8          The preliminary order of forfeiture filed on August

9   13th, 2018 is hereby made final as to this defendant, shall be

10  incorporated into the judgment in this case.

11         Upon release from imprisonment, the defendant shall

12  be placed on supervised release for a term of 120 months.

13  Within 72 hours of release from the custody of the Bureau of

14  Prisons, the defendant shall report in person to the probation

15  office in the district to which he is released.

16         While on supervised release, the defendant shall not

17  commit another federal, state or local crime.  And shall not

18  illegally possess controlled substances.  He shall also

19  cooperate in the collection of a DNA sample as directed by the

20  probation officer and shall comply with the standard

21  conditions which have been recommended by the US Sentencing

22  Commission and adopted by this Court.

23         The defendant shall comply with the requirements of

24  the Sex Offender Registration & Notification Act, 34 United

25  States Code, Section 2901, et seq. as directed by his

1   probation officer, the Bureau of Prisons or any state sex

2   offender registration agency in which he resides, works, is a

3   student or was convicted of the qualifying offense.

4       The mandatory drug testing condition is suspended by

5   the Court based upon a determination that the defendant poses

6   a low risk of future substance abuse.

7       The Court adopts the special conditions recommended

8   by the probation officer on pages 17 through 19 of the

9   presentence report and imposes all of those listed as special

10  conditions.

11      And is there a request for Bureau of Prisons facility

12  in Minnesota?

13      MR. KERSTEN:  Your Honor, we would request Rochester,

14  which is a medical facility, given Mr. Rose's age and health.

15  But we would ask that it be requested as Rochester or other

16  facility in Minnesota in case he doesn't qualify for

17  Rochester.

18      THE COURT:  The Court will recommend to the Bureau of

19  Prisons that the defendant be designated to serve his

20  remaining sentence at the Bureau of Prisons institution

21  located in Rochester, Minnesota or alternatively in another

22  Minnesota institution.  But only to the extent that

23  recommendation is consistent with security classification and

24  space availability.

25      And the government's motion with respect to Counts

1 | Two and Three?

2 |      MR. ENOS: In light of today's judgment and

3 | sentencing, the government moves to dismiss Counts Two and

4 | Three of this action.

5 |      THE COURT: Those counts are dismissed on the

6 | government's motion.

7 |      Mr. Rose, I note that as part of your plea agreement,

8 | you waived both the right to appeal as well as to collaterally

9 | attack your plea and sentence in this case. Nonetheless, I

10 | will advise you that if you wish to appeal from the sentence

11 | that I've just imposed, you must file a written notice of

12 | appeal with the Court within 14 days of today's date. If you

13 | cannot afford an attorney in connection with that appeal, the

14 | Court will appoint one for you.

15 |      THE DEFENDANT: Thank you, Your Honor.

16 |      THE COURT: Is there anything further?

17 |      MR. ENOS: Just with respect to the judgment properly

18 | identifying where restitution should go, what the government

19 | recommends is that I'll talk with family members and make sure

20 | I get a proper address and name. And is it okay if I directly

21 | email the courtroom deputy and I'll cc the Court as well as

22 | Mr. Kersten?

23 |      THE CLERK: The probation department is the one that

24 | puts all that information in.

25 |      MR. ENOS: In that case, I can get Officer Micheli

1    know.

2              PROBATION OFFICER:  That would be our request, Your

3    Honor.  We've kind of become the gate keepers of the

4    restitution process.

5              THE COURT:  The Court's --

6              MR. ENOS:  My apologies.

7              THE COURT:  -- intention is that the restitution be

8    paid to the victim of the offense at an address to be

9    provided.

10             PROBATION OFFICER:  Your Honor, may I inquire if the

11   victim is still a minor?

12             THE COURT:  She is now.

13             MR. KERSTEN:  17.

14             THE COURT:  But with an eight and a half year -- or

15   with a ten year sentence, which even with credit for time

16   served, is going to be a number of years.  Well, I guess

17   restitution could be -- some payment could be made during the

18   time of incarceration.

19             PROBATION OFFICER:  I have to go back and check my

20   notes, Your Honor, but we may reach out to the Court and the

21   parties with specific wording that might need to be

22   incorporated on the judgment to account for the fact that the

23   victim is a minor but may reach age of majority during that

24   period.

25             THE COURT:  She is going to for sure.

1          PROBATION OFFICER:  And I need to check my notes,

2     Your Honor.  There's a specific -- I think there's some

3     specific language that needs to be on the judgment for that

4     situation.  I'll have to check and advise.

5          THE COURT:  All right.  Just advise me --

6          PROBATION OFFICER:  Yes, Your Honor.

7          THE COURT:  -- when you've identified that

8     information.  We may want to check about when the victim

9     reaches the age of majority.  Because it may not be all that

10    far out in the distance as well.  I think it's going to be

11    she's going to turn 18 in the not too distant future.

12         PROBATION OFFICER:  Okay.  Understood, Your Honor.

13    Thank you.

14         THE COURT:  Anything further?

15         MR. KERSTEN:  No, Your Honor.  Thank you.

16         MR. ENOS:  No, Your Honor.

17         THE COURT:  Thank you.

18      (The proceedings were concluded at 11:53 a.m.)

19

20         I, KAREN HOOVEN, Official Reporter, do hereby certify

21    that the foregoing transcript as true and correct.

22

23    DATED:  14th of November, 2018     /s/  Karen Hooven
                                          KAREN HOOVEN, RMR-CRR
24

25